United States District Court
Southern District of Texas

**ENTERED**
June 15, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION**

| | |
|---|---|
| IMRAN ATAIE, | § |
| | § |
| **Plaintiff,** | § |
| | § |
| VS. | §    **CIVIL ACTION NO. 5:26-CV-00904** |
| | § |
| MARKWAYNE MULLIN, *et al.*, | § |
| | § |
| **Respondents.** | § |

## MEMORANDUM AND ORDER

Pending before the Court is Petitioner Imran Ataie's ("Petitioner" or "Mr. Ataie") Petition for Writ of Habeas Corpus, (Dkt. 1), challenging his post-removal-order detention by Immigration and Customs Enforcement (ICE) officials with the Department of Homeland Security (DHS).

For the reasons set forth below, Petitioner's Petition for Writ of Habeas Corpus, (Dkt. 1), is **GRANTED IN PART**. Respondents' Response to Petitioner's Petition for Writ of Habeas Corpus, and Motion to Dismiss, and Alternatively, Motion for Summary Judgment, (Dkt. 9), is **DENIED**.

## Background

Petitioner is a 33-year-old citizen of Afghanistan who fled to the United States due to persecution he faced from the Taliban. (Dkt. 1 at 5; Dkt. 9 at 2.) He entered the United States on January 3, 2025, and was detained upon entry. (Dkt. 1 at 5; Dkt. 9 at 2.) Petitioner was initially placed into expedited removal and was later transferred into removal proceedings under 8 U.S.C. § 1229a. (Dkt. 1 at 5; Dkt. 9 at 2–3.) He filed an application for asylum, and withholding of removal under Immigration and Nationality Act (INA) § 241(b)(3) and the Convention Against Torture

1 / 9

(CAT). (Dkt. 1, Attach. 4.)[1] On June 24, 2025, an Immigration Judge (IJ) denied his applications and ordered Mr. Ataie removed to Afghanistan. (*Id.*) The IJ's decision became final on July 24, 2025, after the appeal deadline passed with no appeal from DHS or Petitioner. (*Id.* at 5; Dkt. 9 at 3.) As such, Mr. Ataie is subject to a final order of removal to Afghanistan. (Dkt. 1 at 5–6; Dkt. 9 at 3.)

On May 14, 2026, Mr. Ataie filed a Petition for Writ of Habeas Corpus, challenging his prolonged post-removal-order detention. (Dkt. 1.) Petitioner argues that his prolonged post-removal-order detention is unlawful under *Zadvydas v. Davis*, 533 U.S. 678 (2001) as he has been detained for more than six months since his removal order became final on July 24, 2025, and his removal is not reasonably foreseeable. (*Id.* at 6–10.) Petitioner also requested an Emergency Temporary Restraining Order (TRO) seeking for the Court to enjoin Respondents from removing him to any country other than Afghanistan, typically referred to as "third country" removal, without first providing him with notice and a meaningful opportunity to seek fear-based protections before an IJ as to the third country. (*Id.* at 13–14.) The Court ordered Respondents to respond to Petitioner's petition on or before May 22, 2026. (Dkt. 5.) On May 22, 2026, Respondents filed a Motion for Extension of Time, (Dkt. 7), which the Court granted later that day. (*See* Dkt. 8.)

Respondents subsequently filed a Response to Petitioner's Petition for Writ of Habeas Corpus, and Motion to Dismiss, and Alternatively, Motion for Summary Judgment on May 25, 2026. (Dkt. 9.) Respondents argue that Petitioner's continued detention does not violate *Zadvydas* because Petitioner is unable to show that there is no significant likelihood of removal in the near

---

[1] The Court will use "Attachment" to refer to sub-filings in accordance with official docket entries. The Court will use the page numbers auto-generated by CM/ECF in citations to the docket entries.
2 / 9

future. (*Id.* at 7.) Respondents also opposed Petitioner's request for an emergency TRO, stating to the Court that ICE has no current plans to remove Petitioner to any country other than Afghanistan. (*Id.*) Petitioner filed a reply, (Dkt. 10), arguing that Petitioner has met his burden under *Zadvydas* to show that there is a good reason to believe that his removal is not foreseeable and arguing that Respondents have failed to present any evidence to the contrary. (*Id.* at 2–4.)

## Legal Standard

### A.  28 U.S.C. § 2241

A district court may grant a writ of habeas corpus if a petitioner is in federal custody in violation of the Constitution or federal law. 28 U.S.C. § 2241. "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). 28 U.S.C. § 2241(c)(3) authorizes "any person to claim in federal court that he or she is being held 'in custody in violation of the Constitution or laws . . . of the United States.'" *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). Accordingly, § 2241 confers jurisdiction upon the federal courts to hear challenges to the lawfulness of immigration-related detention. *Id*. (citing 28 U.S.C. § 2241(c)(3)); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003); *Baez v. Bureau of Immigr. & Customs Enf't*, 150 F. App'x 311, 312 (5th Cir. 2005) (unpublished); *Oyelude v. Chertoff*, 125 F. App'x 543, 546 (5th Cir. 2005) (unpublished).

Habeas is "the basic method for obtaining review of continued *custody after* a deportation order had become final" and is available "as a forum for statutory and constitutional challenges to post-removal-period detention." *Zadvydas*, 533 U.S. at 687 (citation omitted). "Whether a set of particular circumstances amounts to detention within, or beyond, a period reasonably necessary to secure removal is determinative of whether the detention is, or is not, pursuant to statutory

3 / 9

authority. The basic federal habeas corpus statute grants the federal courts authority to answer that question." *Id*. at 699 (citing 28 U.S.C. § 2241(c)(3)).

Moreover, a Court is not required to hold a hearing when the habeas petition "raises only questions of law, or questions regarding the legal implications of undisputed facts." *Tijerina v. Thornburgh*, 884 F.2d 861, 866 (5th Cir. 1989) (citations omitted); *see also Trejo v. Warden of ERO El Paso E. Montana*, 807 F. Supp. 3d 697, 703 (W.D. Tex. 2025) (citation omitted).

## Discussion

As an initial matter, the Court has jurisdiction to hear Petitioner's claim challenging the lawfulness of his post-removal order detention. *See Khan v. Bondi, et. al.*, 5:26-cv-00042, Dkt. No. 24 (S.D. Tex. Mar. 2, 2026) ("*Khan v. Bondi*") (analyzing the Court's jurisdiction to hear such claims). The Court considers Petitioner's claims that his ongoing detention violates the INA and his rights under the Due Process Clause of the Fifth Amendment as interpreted in *Zadvydas*. (*See* Dkt. 1 at 10–14.)[2]

The Supreme Court held in *Zadvydas* that the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal. 533 U.S. at 699. Therefore, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* (citations omitted). In order to guide lower courts reviewing the reasonableness of continued detention, the Supreme Court determined that there is a presumptively reasonable period

---

[2] The Court refrains from considering the merits of Mr. Ataie's request for an Emergency Temporary Restraining Order because his request is premature. (*See* Dkt. 1 at 13–14.) Mr. Ataie claims that Respondents' recent practice of removing noncitizens to third countries without affording them with notice of the country of intended removal or an opportunity to be heard on a fear-based claim violates his due process rights, and he seeks for the Court to issue an injunction to this effect. (*Id*.) However, Respondents have stated that ICE is not pursuing third-country removal for Petitioner at this time. (Dkt. 9 at 7.) Therefore, the Court will decline to address the merits of Petitioner's claim. Petitioner may renew his request for emergency relief if the circumstances change such that Petitioner's removal to a third country is likely.

of six months of detention from the time that a removal order becomes final. *Id.* at 701.[3] After six months have elapsed, once a noncitizen provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* If the respondents do not offer sufficient rebuttal evidence once a habeas petitioner has made such a showing, then the court should grant the writ and order the habeas petitioner released under the *Zadvydas* framework. *See id.*; *but see Andrade v. Gonzales*, 459 F.3d 538, 543–44 (5th Cir. 2006) (finding that petitioner had failed to meet his initial burden when he offered "nothing beyond [his] conclusory statements").

Upon review of Petitioner's unlawful detention claim, the Court finds that Petitioner's claim presents nearly identical legal questions to those previously considered by the Court in *Khan v. Bondi, et. al.*, 5:26-cv-00042 (S.D. Tex. Mar. 2, 2026) in which the Court found that the petitioner, Mr. Malekzada, a native of Afghanistan with a final order of removal to Afghanistan, provided good reason to believe that there was no likelihood of removal in the reasonably foreseeable future, and the respondents did not in turn establish that the petitioner's removal was reasonably foreseeable. *Khan*, 5:26-cv-00042, Dkt. No. 24 at *11–17.

Mr. Malekzada was detained for over one year in total and remained in custody for over 200 days after his removal order became final. *Id*. at *7. Where Mr. Malekzada submitted allegations that DHS failed to remove him for more than 180 days and he still remained detained with no future timeline for his removal, and where there had been no progress in obtaining the required travel letter authorizing his removal to Afghanistan, the Court found that Mr. Malekzada had provided good reason to believe that there was not a significant likelihood of removal in the

---

[3] Courts, including this one, have understood the six-month presumption to be a period of 180 days which comports with DHS's post-removal custody review procedures. *See Sanchez v. Noem*, 2025 WL 3760317, at *8 (S.D. Tex. Nov. 14, 2025); 8 C.F.R. § 241.4(k)(2)(ii).

reasonably foreseeable future. *See id.* at *11–12. Having found that Mr. Malekzada had provided a good reason to believe that his removal was not reasonably foreseeable, the Court further found that the respondents, in turn, failed to rebut the petitioner's showing with evidence that he would be removed. The Court noted that "[w]hat constitutes the 'reasonably foreseeable future' will depend on the length of detention. That is, 'as the period of prior post removal confinement grows, what counts as the reasonably foreseeable future conversely would have to shrink.'" *Id.* at *12 (quoting *Qasemi v. Kurzdorfer*, 2025 WL 2938607, *3 (W.D.N.Y. Oct. 16, 2025)). Recognizing that the respondents had provided no indication that Afghanistan intended to accept Mr. Malekzada for repatriation, that the United States' relationship with Afghanistan presented challenges to repatriating the petitioner, and that DHS had not identified any alternate countries willing to accept the petitioner, the Court found that the respondents failed to provide evidence that Mr. Malekzada's removal was reasonably foreseeable. *Khan*, 5:26-cv-00042, Dkt. No. 24 at *12–13.

Just like the petitioner in *Khan*, Mr. Ataie has shown that there is good reason to believe that his removal is not reasonably foreseeable. He has demonstrated that he has been in continuous detention for over ten months since his removal order became final. (*See* Dkt. 1 at 3, 5.) He further provides that ICE has not been able to arrange for Petitioner's removal to Afghanistan because they are unable to obtain the required "transportation letter" from Afghanistan's embassy and also notes that ICE has repeatedly told Petitioner that the process of removal to Afghanistan takes "forever" due to Afghanistan's "country guidelines." (*Id.* at 6; Dkt. 10 at 1–3.) Petitioner also argues that that Afghanistan does not appear to be currently issuing the Transportation Letters required for removal or even accepting deportees from the United States based on available data. (Dkt. 1 at 7–10; Dkt. 10 at 1–3.) Thus, Mr. Ataie has met his burden to show that there is good reason to believe his removal is not reasonably foreseeable. *See Khan*, 5:26-cv-00042, Dkt. No.

24 at *11–13; *see also*, *Haidari v. Bondi*, 2026 WL 395683, at *2 (W.D. Wash. Feb. 12, 2026) ("the Government has not obtained travel documents from Afghanistan for Petitioner nor has Afghanistan agreed to accept Petitioner . . . . Because Afghanistan has not yet agreed to accept Petitioner and no travel documents have been issued, the Court is persuaded that there is good reason to believe removal is not reasonably foreseeable.").

Respondents, in turn, have failed to rebut Petitioner's evidence to demonstrate that Mr. Ataie's removal is reasonably foreseeable. In their Response to Petitioner's Petition for Writ of Habeas Corpus, and Motion to Dismiss, and Alternatively, Motion for Summary Judgment, (Dkt. 9), Respondents provide only that on July 30, 2025, ICE's Enforcement and Removal Operations (ERO) received Petitioner's passport via mail and that on September 12, 2025, ICE's Enforcement and Removal Operations (ERO) made a request for a Transportation Letter required for removal to the U.S. Embassy in Doha, Qatar that is still pending as of Respondents' most recent update to the Court. (Dkt. 9 at 3.)

Just as in *Khan v. Bondi*, Respondents have failed to show that there is any indication that Afghanistan intends to accept Petitioner for repatriation, especially given that the United States' relationship with Afghanistan presents challenges to repatriation. *Khan*, 5:26-cv-00042, Dkt. No. 24 at *13–14 (citing *Nguyen v. Noem*, 2026 WL 237282, at *8 (S.D. Tex. Jan. 28, 2026) (considering the United States' "strained diplomatic relationship" with Petitioner's country of origin)). Indeed, Respondents do not present any evidence or argument beyond the bare assertion that ICE personnel anticipate removing Petitioner to Afghanistan, and Respondents do not contend with the fact that no progress has been made in receiving the required travel documents in the months since ICE ERO requested it. (Dkt. 9 at 7.)

This lack of meaningful progress towards removal while Mr. Ataie has remained detained indicates that his removal is not reasonably foreseeable. *See Misirbekov v. Venegas*, 2025 WL 3033732, at *2 (S.D. Tex. Oct. 29, 2025) (finding that a "lack of progress in removing Petitioner makes removal unlikely in the foreseeable future" for a petitioner detained over nine months post-removal). "[A] remote possibility of an eventual removal is not analogous to a significant likelihood that removal will occur in the reasonably foreseeable future." *Balouch v. Bondi*, 2025 WL 2871914, at *3 (E.D. Tex. Oct. 9, 2025) (citation omitted). Petitioner has shown that Respondents have failed to make meaningful progress towards his repatriation throughout the nearly 10 months of his post-final-order detention, and he has shown is good reason to believe his removal is not reasonably foreseeable. Respondents, in turn, have failed to provide evidence indicating that Petitioner's removal will be effectuated in the reasonably foreseeable future. Thus, Mr. Ataie's continued detention violates his due process rights because there is no significant likelihood of his removal in the reasonably foreseeable future. *See Zadvydas*, 533 U.S. at 699, 701.

## **CONCLUSION**

For the forgoing reasons, Petitioner's Petition for Writ of Habeas Corpus, (Dkt. 1), is **GRANTED IN PART**. Respondents' Response to Petitioner's Petition for Writ of Habeas Corpus, and Motion to Dismiss, and Alternatively, Motion for Summary Judgment, (Dkt. 9), is **DENIED**.

Respondents are hereby **ORDERED** to immediately **RELEASE** Petitioner from custody under reasonable conditions of supervision. Respondents are **ORDERED** to notify the Court of the status of Petitioner's release **within 48 hours of the issuance of this order**. Respondents are also **ORDERED** to notify Petitioner's counsel of the exact location and exact time of his release as soon as practicable and **no less than three hours before release**.

The Court further **ORDERS** that Petitioner cannot be re-detained without a material change in circumstances. The Court's Order dated May 15, 2026, (Dkt. 5), requiring Respondents to notify the Court of any anticipated or planned removal of Petitioner **at least five (5) days** beforehand **REMAINS IN EFFECT**.

IT IS SO ORDERED.
SIGNED this June 15, 2026.

Diana Saldaña
United States District Judge